EDWIN BEAN, Appellant, *v.* THE AMERICAN LOAN AND TRUST COMPANY, Impleaded, etc., Respondent.

Plaintiff was the owner of certain shares of the stock of a corporation. An agreement was entered into by all the other stockholders, one of whom was W., who represented himself to be the owner of plaintiff's stock, and included it in the amount for which he signed. By the agreement, the stockholders contracted to sell their stock to a new company which had been organized; they to accept in payment therefor the stock

and bonds of the new company, which were to be deposited in *escrow* with defendant, the A. L. & T. Co., for one year; it agreeing to receive and hold the same in trust and to issue a certificate to each of said stockholders to the effect that the person named therein was owner of the number of bonds and of shares of stock specified, the same to be delivered at the end of the year to the stockholder, or his order, at the option of the holder, on surrender of his certificate. The agreement, by its terms, was only to be binding when signed by all the owners of the stock of the old company. Upon representation of the secretary of the old company that W. was owner of the bonds and stock of the new company, issued under the agreement for plaintiff's stock, and was entitled to receive the certificate, the defendant issued its certificate therefor in the name of W., and delivered it to said secretary, who delivered it to W.; the latter was not a resident of the state. In an action brought to compel the A. L. &. T. Co. to deliver to plaintiff the bonds and stock deposited with it to pay for his stock, *held*, that a judgment absolutely directing such a surrender was error; that said defendant, being a mere depositary, and having, in good faith, issued the certificates as directed, it was entitled to be fully protected; that, although W. was made a party to the action, and there had been no transfer of the certificate up to the end of the year, yet, as he was out of the jurisdiction, and so the court was powerless to compel a surrender of the certificate so issued to him, and, as he could transfer it under circumstances by which plaintiff would be estopped from questioning the title of an innocent purchaser for value, the judgment did not protect the defendant company; that as, by the agreement, it was not to be binding until all the stockholders had signed, plaintiff was not prejudiced thereby, or his stock or rights affected or impaired, and he had no interest in the new company or right to any of its stock or bonds, unless he came in and made himself a party to the contract, which could only be done by ratifying the acts of W., as his agent *ex maleficio*, in which case, as W. had received the evidences of title, he had it in his power to transfer to a *bona fide* purchaser for value, and, as against such a purchaser, plaintiff would be estopped from claiming the certificate, or the stock and bonds represented by it; but *held*, that as it could not be assumed that W., although a non-resident, would disobey the mandate of the court, the judgment should be modified so as to direct W. to deliver to the A. L. & T. Co. its certificates for stock and bonds equal to the amount plaintiff was entitled to, and, upon such surrender, that said company deliver to plaintiff the bonds and stock certificates.

(Argued December 2, 1890; decided December 16, 1890.)

APPEAL from so much of the judgment of the General Term of the Supreme Court in the first judicial department,

entered upon an order made March 22, 1888, which adjudged that all of those parts of the judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term, appealed from by the defendant, The American Loan and Trust Company, should be reversed.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Geo. C. Holt* for appellant. The plaintiff has an absolute right to his bonds and stock, whether the trust company's certificates are returned or not. (Pom. Eq. Juris. §§ 1048, 1053; *McNeil* v. *T. N. Bank*, 46 N. Y. 325; *Van Alen* v. *A. N. Bank*, 52 id. 1; *Dows* v. *Kidder*, 84 id. 121; *Falkland* v. *S. N. N. Bank*, Id. 145; *People* v. *City Bank*, 96 id. 32; *Baker* v. *N. Y. N. E. Bank*, 100 id. 31; *Moore* v. *A. L. & T. Co.*, 115 id. 65; Story's Eq. Juris. §§ 1254, 1265; *Newton* v. *Porter*, 69 N. Y. 133; *May* v. *LeClaire*, 11 Wall. 217; *United States* v. *State Bank*, 96 U. S. 30; *Knatchbull* v. *Hallett*, L. R. [13 Ch. Div.] 696; *N. Bank* v. *L. Ins. Co.*, 104 U. S. 54; *Ledwick* v. *McKim*, 53 N. Y. 307; *Jackson* v. *V., etc., Co.*, 2 Woods, 141; *D. S. M. Co.* v. *Best*, 105 N. Y. 59; *Goddington* v. *Gilbert*, 17 id. 489.) There is no distinction between the 193 bonds represented by the certificates coming originally from the certificate for 1,500 bonds representing the Sovereign group, still outstanding in the name of Whipple, and the balance of the 317 bonds which are represented by certificates now outstanding in the name of Whipple. (*Van Alen* v. *A. N. Bank*, 52 N. Y. 1; Story's Eq. Juris. § 465; *N. Bank* v. *L. Ins. Co.*, 104 U. S. 54.)

*B. F. Blair* for respondent. The judgment of reversal is right, because the facts proved and undisputed did not warrant a decree requiring the defendant trust company to deliver any bonds or stock of the Sovereign Mining Company to Bean, or to anybody else, except in accordance with the trust upon which it had received and held them. (Story on Agency,

§ 250; Meacham on Agency, §§ 130, 148, 151, 766; Whart. on Agency, § 72; *Drakely* v. *Gregg*, 8 Wall. 242; *Fowler* v. *N. Y. G. E. Bank*, 67 N. Y. 138, 143.)

HAIGHT, J. This action was brought to obtain from the defendant, the American Loan and Trust Company, 266 bonds and certificates for 6,650 shares of stock of the defendant, the Sovereign Mining Company.

Issues were disposed of by the judgment which are not brought up for review by this appeal, and we shall only call attention herein to such facts as bear upon the questions presented.

On or about the 1st day of March, 1883, the plaintiff became the owner of 1,777 shares of the stock of the defendant, the Sovereign Gold Mining Company. Thereafter and during the summer or fall of 1884, a new corporation was organized under the laws of this state known as the Sovereign Mining Company, and an agreement was entered into by the stockholders of the former company, other than the plaintiff herein, to sell their stock to the new company and to accept in payment therefor the bonds and stocks of that company.

In such agreement the defendant, R. M. Whipple, represented himself to be the owner of 3,677 shares of the stock of the old company, and signed for that number, when in fact 1,777 shares thereof belonged to the plaintiff.

The agreement further provided that the bonds and stock of the new company which by the terms thereof were to be given to the stockholders of the old company, should be deposited in escrow with the defendant, the American Loan and Trust Company, for the period of one year from the 1st day of December, 1884, that company agreeing to take such bonds and stock and to hold the same in escrow for the period aforesaid, and to issue to the stockholders of the Sovereign Gold Mining Company a certificate in each case to the effect that the person named in the certificate was the owner of the number of bonds and shares of stock therein mentioned, as the case might be, of the Sovereign Mining Company, and that

the same was held in trust by it for the period aforesaid, and that at the expiration of that period the bonds or stock, as the case might be, should be delivered to the stockholder or his order, at the option of the holder thereof, on the surrender of his certificate.

The provisions of the agreement having been carried out, the defendant Whipple represented to the officers of the Sovereign Gold Mining Company that he was the owner of the 1,777 shares of the stock which was in fact owned by the plaintiff, and that the same was with the plaintiff in Chicago on loan; that if they would direct the defendant, the American Loan and Trust Company, to deliver to him the certificates for such stock, he would immediately, upon his return to Chicago, take up the stock held by the plaintiff and return the certificates therefor to the secretary of the Sovereign Gold Mining Company. Thereupon, the directors of the Sovereign Gold Mining Company authorized its secretary to represent to the defendant, the American Loan and Trust Company, that the defendant Whipple was the owner of the bonds and stock of the new company, that under the agreement was to be issued for the 1,777 shares of the stock of the old company, and that he was entitled to receive the certificates therefor, and thereupon, upon receiving such representation, the defendant, the American Loan and Trust Company, did issue such certificates in his name and delivered the same to the secretary of the defendant, the Sovereign Mining Company, who delivered the same to Whipple. Subsequently, the plaintiff, upon hearing of these facts, demanded of the defendant, the American Loan and Trust Company, the surrender to him of the bonds and stock in question, which was refused and thereupon this action was brought.

The trial court adjudged and determined that the plaintiff was entitled to recover of the defendant, the American Loan and Trust Company, the bonds and stock in question, and the defendant Whipple was adjudged and directed to deliver up to the American Loan and Trust Company its certificates, which had been issued to him.

It will be observed that the defendant, the American Loan and Trust Company, was a mere depositary of the stocks and bonds, having no pecuniary interest therein; that it had but executed the provisions of the contract of the stockholders and had issued its certificates to the owners of the stock as represented and directed by the officers of the corporations. It is conceded to be an innocent party acting in good faith, and is, therefore, under the circumstances entitled to the fullest protection that the court can give, and this right appears to have been recognized by the trial court for in its opinion it states: "The practical question is whether the trustee will be protected by the decrees directing the delivery of the bonds and shares to the plaintiff. If it will be, then there is no necessity for imposing upon the plaintiff a conditional judgment which Whipple might frustrate by remaining out of the jurisdiction and refusing to turn over the certificates." The learned trial judge then proceeds to call attention to the fact that Whipple was a party to this action; that there had been no transfer of the certificates by him up to the end of the year in which the bonds were to be left in escrow; that by the judgment herein the plaintiff was adjudged to be the rightful owner and reached the conclusion that the defendant, the trust company, would be amply protected. In this conclusion, we are inclined to the opinion that the trial court was mistaken, and that the protection to the trust company is not as ample as it should be.

The defendant Whipple resides in the city of Chicago, out of the jurisdiction of the court, and it is powerless, therefore, to compel a surrender of the certificates. The certificates issued by the trust company to Whipple, pledged the trust company to deliver the bonds and stocks to him or his order on the surrender of the certificates. He had but to indorse the certificates and pass them to another person to enable such person to present the certificates and demand the delivery of the bonds and stocks called for. True, he was in possession of the certificates after this action was brought, but whether he still remains in possession or has sold and transferred the

same to an innocent purchaser for value does not appear. We shall not stop to determine whether or not the certificates are negotiable or whether they were transferred before or afer the expiration of the year that they were to remain in escrow. All we now wish to assert is that circumstances may exist in which the plaintiff would be estopped from questioning the title of an innocent purchaser for value.

The contract by its terms was only to be binding when signed by all the owners of the stock. Consequently the plaintiff was not prejudiced thereby. His stock in the old company was not affected, or his rights impaired. He had no interest in the new company or right to any of its bonds or stock, unless he came in and made himself a party to the contract. He has not subscribed the contract or turned in his stock in the old company. The only way he has made himself a party thereto is by ratifying that which has been done in reference to his stock. Whipple had signed for the plaintiff's stock and received a certificate therefor, and in in order to entitle the plaintiff to recover in this action he must be treated as electing to ratify the acts of Whipple as his agent *ex maleficio*, thus making the contract his own and becoming bound by its provisions; by its terms the stock and bonds in question were to be delivered to the trust company to be held by it for the period of one year, and it was required to issue its certificates therefor. This had been done and Whipple was thus given the evidences of title, and has it in his power to induce innocent persons to purchase and pay value therefor, under circumstances in which the plaintiff may be estopped from claiming the certificates, and the bonds and stocks that they represent.

The certificates issued to Whipple were for a larger number of bonds than the plaintiff is entitled to. A portion of the bonds embraced in the certificates were owned by Whipple and he had the right to dispose thereof. If, therefore, other persons should present to the trust company its certificates with Whipple's indorsement thereon, it would be powerless to determine whether the certificates were the certificates of

Whipple or those which should belong to the plaintiff. It may be true that stocks and bonds have no ear-mark so that one may be distinguished from another, but we think it must be admitted that Whipple could sell and transfer his certificates for bonds and stock until that which was left in his possession was reduced to the number belonging to the plaintiff, but the trust company is left powerless to determine when such amount has been transferred by him. It can determine only when a certificate is presented to it indorsed by him, and certificates may have been previously transferred to other parties for the entire amount owned by him.

It may be claimed that the trust company improperly issued the certificates to Whipple, but we must bear in mind that the company was dealing with the persons who had signed the contract, and that it had only issued the stock to the persons directed by the officers of the Sovereign Gold Mining Company and not even then was the delivery made by the trust company to the stockholders, for the certificates were in fact delivered by the trust company to the secretary of the Sovereign Gold Mining Company, who distributed and delivered them to the parties entitled thereto. We see nothing in this transaction which charges the trust company with negligence in reference thereto, or why it should not receive full protection from any liability by reason of the issuing of any such certificates.

We are, however, inclined to the view that a reversal by the General Term was not necessary, but that the judgment should instead have been modified. It was adjudged that "the defendant Rodney M. Whipple be, and he hereby is directed to forthwith deliver to the defendant, the American Loan and Trust Company, its certificates for the bonds and stock of said Sovereign Mining Company to an amount equal to the said 266 bonds and said 6,650 shares of stock."

Although a non-resident, we cannot assume that he will disobey the commands of the decree. The judgment should be modified by adding to the above provision, that upon the surrender of the certificates of such bonds and stock to the

defendant, the American Loan and Trust Company, it forthwith deliver to the plaintiff, Edwin Bean, or his attorney, 266 bonds and certificates for 6,650 shares of the stock of the defendant, the Sovereign Mining Company, etc., as is already provided for in the judgment.

The judgment of the General Term should be reversed, and that of the trial court modified as herein indicated, without costs of this appeal to either party.

All concur.

Judgment accordingly.